UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES MIZER,<br><br>             Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>             Defendant. | Case No. 4:20-CV-00324-DKG<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS (DKT 34)** |

## INTRODUCTION

Before the Court is Defendant's Motion to Dismiss the Amended Complaint. (Dkt. 34). The motion is fully briefed and ripe for the Court's consideration. (Dkt. 37, 38). On April 4, 2024, the Court held oral argument and took the motion under advisement. (Dkt. 40). On April 5, 2024, Plaintiff filed a Supplement addressing two issues raised during the hearing. (Dkt. 41). For the reasons that follow, the Court will grant Defendant's Motion to Dismiss, but will allow leave to amend as to Claim One.[1] Claim Two will be dismissed with prejudice.

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 7).

## BACKGROUND

In this action, Plaintiff seeks to adjudicate his claims of permanent easements, rights-of-way, and rights of access to certain diversions and ditches on Champion Creek and Warm Creek located in Custer County, Idaho. (Dkt. 1, 32). The diversions - known as CHC3 and WMC1 – are located on private land. The ditches between CHC3 and Plaintiff's property cross land belonging to the United States, which Plaintiff claims are subject to a permanent easement or right-of-way. Plaintiff also claims a right-of-way to enter property of the United States to facilitate diversion of water from Warm Creek to WMC1, by installing dams and structures and cleaning the creek of obstructions. The federal land is administered by the United States Forest Service (USFS).

The case was stayed for some time at the request of the parties to allow for settlement discussions and to await the Supreme Court's decision in *Wilkins v. United States*. On April 3, 2023, the stay was lifted. (Dkt. 30). Plaintiff filed an Amended Complaint on April 17, 2023, which is the current operative pleading. (Dkt. 32).

The Amended Complaint raises two claims for relief. Claim One is brought under the under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, asserting Plaintiff has rights to convey water and to access, maintain, and utilize the CHC3 diversion and related ditches or other conduits pursuant to the Act of July 26, 1866, also known as the Mining Act of 1866, 43 U.S.C. § 661 (1866 Act), and Revised Statute Section 2339 (RS 2339), collectively referred to herein as "the 1866 Act/RS 2339." (Dkt. 32 ¶¶ 51-57). Claim Two seeks to quiet title to Plaintiff's claimed rights-of-way to access property of the United States to facilitate diversion of water from Warm Creek to WMC1 pursuant to Idaho law.

(Dkt. 32 ¶¶ 58-62). On May 19, 2023, Defendant filed the Motion to Dismiss presently before the Court seeking to dismiss the Amended Complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. 34). The Court finds as follows.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statutes enacted by Congress. *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, a federal court cannot consider claims for which it lacks subject matter jurisdiction. A party may move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Additionally, a court may raise the question of subject matter jurisdiction *sua sponte* at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who raises the issue, "when a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)); Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant's motion presents factual challenge. (Dkt. 34 at 2; and Dkt. 34-2). A factual attack challenges "the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "[N]o presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A factual attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733) ("[T]he district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary.")).

The party asserting federal jurisdiction bears the burden of proving subject matter exists, and must present any necessary evidence to satisfy its burden when faced with a motion to dismiss. *St. Clair*, 880 F.2d at 201; *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (The party asserting a claim against the United States bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress."). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. *Trentacosta v. Frontier Pac. Aircraft Ind., Inc*., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

If the nonmoving party fails to meet its burden and the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "[I]n general, dismissal for lack of subject matter jurisdiction should be without prejudice." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n. 2 (9th Cir. 2019). However, where the bar of sovereign immunity is absolute and cannot be cured, dismissal may be with prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

## DISCUSSION

### 1. Claim One - Quiet Title Act

An action can be brought against the United States only where the federal government waives its sovereign immunity. *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). Absent a clear waiver of sovereign immunity, the Court is without subject matter jurisdiction. *Block v. N. Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 280 (1993).

The QTA provides a limited waiver of sovereign immunity in a civil action to adjudicate a disputed title to real property in which the United States claims an interest. 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest…."); 28 U.S.C. § 1346(f) (providing that district courts "shall have original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"). Indeed, the QTA is the "exclusive means by which adverse claimants [can] challenge the United

States' title to real property," *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994) (quoting *Block*, 461 U.S. at 286), and "applies to claims against the United States for rights of access, easements, and rights-of-way, as well as those involving fee simple interests" *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014). The QTA requires that the complaint "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d); *see Leisnoi, Inc. v. United States* (*Leisnoi I*), 170 F.3d 1188, 1191 (9th Cir. 1999) (recognizing sections 2409a(a) & (d) impose conditions upon the waiver of sovereign immunity). The "particularity" requirement in section 2409a(d) "necessitates a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 897-898 (9th Cir. 2013).

"[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: 1) the United States must claim an interest in the property at issue, and 2) there must be a disputed title to real property between the interests of the plaintiff and the United States." *Leisnoi, Inc. v. United States* (*Leisnoi II*), 267 F.3d 1019, 1023 (9th Cir. 2001) (discussing *Leisnoi I*, 170 F.3d at 1191). "If either condition is absent, the [QTA waiver of sovereign immunity]…does not apply and the district court lacks jurisdiction to entertain the action." *Leisnoi I*, 170 F.3d at 1191.

On this motion, the first condition is uncontested, as the rights-of-way claimed by Plaintiff involve land owned by the United States. Instead, Defendant challenges the second condition, arguing no disputed title has been shown to exist. (Dkt. 34).

**MEMORANDUM DECISION AND ORDER – 6**

For title to be disputed under the QTA, the United States must have "adopted a position in conflict with a third party regarding that title." *Mills*, 742 F.3d at 405. "[T]o satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it." *Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1212 (10th Cir. 2014); *see also Mills*, 742 F.3d at 405. While the QTA does not require the United States to place gates or signs restricting access, or to physically remove individuals from traveling along before a disputed title is found, there must be "more than notice of a mere possibility, in the future, [that] a right-of-way may be limited or access denied." *N. Dakota ex rel. Stenehjem v. United States*, 257 F.Supp.3d 1039, 1074 (D. N.D. 2017). "[A]ctions of the United States that merely produce some ambiguity regarding a plaintiff's title are insufficient to constitute 'disputed title." *Kane Cnty.*, 772 F.3d at 1212. "In construing the scope of the QTA's waiver [of sovereign immunity], [courts] have read narrowly the requirement that the title at issue be 'disputed.'" *Mills*, 742 F.3d at 405.

Here, Plaintiff is the current owner of real property irrigated by the diversions and ditches at issue. Plaintiff claims he possesses established pre-FLPMA[2] property rights to

---

[2] Plaintiff uses the term "pre-FLPMA" in the Complaint and briefing when referring to federal land statutes that pre-dated the Federal Land Policy Management Act of 1976 (FLPMA). (Dkt. 32, 37). FLPMA repealed the rights-of-way provisions of the 1866 Act, but preserved rights-of-way that were established under the statute prior to FLPMA's passage. *Baker Ranches, Inc. v. Zinke*, 625 F.Supp.3d 1080, 1092 n. 2 (D. Nevada 2022); 43 U.S.C. § 1769. Plaintiff claims his rights to the diversions and ditches pre-existed the FLPMA.

the diversions and ditches under the 1866 Act/RS 2339 and Idaho law.[3] The Complaint alleges: "The United States disputes that Plaintiff holds legal title to the diversion and irrigation ditches at issue in this proceeding, and instead the United States asserts that it has a legal interest in the diversion and these ditch rights that allows the United States to exercise discretionary control over Plaintiff's diversion and ditch rights at issue herein, as described in greater detail below." (Dkt. 32 ¶ 7). Plaintiff disputes that the USFS has the right to exercise discretion or control over his claimed rights-of-way. (Dkt. 32 ¶ 29). Defendant argues that the USFS has not taken any position regarding Plaintiff's claimed pre-FLPMA rights-of-way and, therefore, no disputed title has been shown. (Dkt. 34).

Plaintiff asserts two bases for finding a disputed title. (Dkt. 32, 37). First, the USFS' position that it has discretionary control over Plaintiff's pre-FLPMA rights-of-way, as evidenced by its agreement to initiate Endangered Species Act (ESA) consultation in another litigation filed in 2018 by the Idaho Conservation League (ICL). (Dkt. 32 ¶¶ 11-21, 25). Second, "specific statements" by a USFS representative, Randy Miller, to Plaintiff stating that Plaintiff "did not have an RS 2339 Right of Way to any of his ditches." (Dkt. 32 ¶¶ 12, 22, 30). The Court will address each in turn below.

## A. ESA Consultation

Plaintiff contends the USFS' agreement to engage in ESA consultation in the ICL litigation, which requires the ability to exercise discretionary control, evidences a

---

[3] Claim One appears to relate to the CHC3 diversion, while Claim Two concerns the WMC1 diversion. However, many of the allegations Plaintiff relies on to establish a disputed title include both CHC3 and WMC1. For this reason, the Court's discussion of the disputed title requirement includes references to both diversions.

disputed title because the USFS' position is contrary to Plaintiff's claims that his pre-FLPMA rights-of-way are entirely free of any USFS control.[4] In support of this assertion, Plaintiff relies on materials related to and filed in the ICL litigation. (Dkt. 32 ¶¶ 14-29).

The ICL litigation challenged the USFS' failure to complete ESA consultation relevant to pending applications for Ditch Bill Easements (DBE) and Special Use Permits (SUP) for twenty named diversions, including WMC1 and CHC3, that were filed in the 1990's. The Court there ordered the USFS to engage in formal consultation pursuant to Section 7 of the ESA. *Idaho Conservation League v. United States Forest Serv. (ICL v. USFS)*, Case No. 1:18-cv-00044-BLW, 2019 WL 2505031 (D. Idaho June 17, 2019).[5]

---

[4] Plaintiff also argues the USFS' failure to file a disclaimer and failure to acknowledge the source of title claimed by Plaintiff further demonstrate the existence of a disputed title. (Dkt. 37 at 5-6). However, Plaintiff has not identified any authority showing the USFS is required to take a position – either disclaiming or acknowledging – an assertion of title. Plaintiff's argument seeks to create a disputed title based on the USFS' failure to take a position concerning his claims of title, when the United States has no obligation to do so. *Compare* 28 U.S.C. § 2409a(a) and (e) (subsection (a)'s requirements for conferring QTA jurisdiction are distinct from subsection (e)'s provision ceasing the jurisdiction of the district court upon the filing of a disclaimer of interest). The argument has been rejected by the Ninth Circuit, which held that no disputed title exists where the United States has not taken a position concerning title. *Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000) ("A title cannot be said to be 'disputed' by the United States if it has never disputed it."). Plaintiff's attempt to distinguish the *Alaska* decision circles back to his argument that the USFS has taken a position in this case – that it has discretionary control over Plaintiff's rights-of-way. (Dkt. 37 at 6). The Court addresses Plaintiff's central contention – a dispute of title exists based on the position taken by the USFS that it has discretionary control over the diversions and ditches – in the body of this decision.

[5] On this motion, the Court may consider evidence outside of the Amended Complaint and resolve factual disputes concerning the existence of jurisdiction. *McCarthy*, 850 F.2d at 560. Further, the Court takes judicial notice of the ICL litigation and filings, as they are referred to and relied on extensively in the Amended Complaint and the parties submissions, and are public records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its own records in other cases); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (matters of public record outside the proceeding such as motions filed in other cases proper subjects of judicial notice). The parties agreed during the hearing that the Court

The duty to consult under Section 7 of the ESA arises where the federal agency retains "some discretion to influence or change the activity for the benefit of a protected species." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021-24 (9th Cir. 2012). The parties in the ICL litigation entered into a Stipulation on Remedy to comply with the Court's Order. *ICL v. USFS*, Order at Dkt. 43 (D. Idaho Nov. 19, 2019). In accordance with the Stipulation on Remedy, the USFS issued a Biological Assessment (BA) dated December 28, 2022. (Dkt. 41).[6] The BA discusses the impacts and effects of activities accessing and maintaining diversions and conduits in the action area relative to the ICL litigation and proposes management actions consisting of issuing DBE and SUP with certain terms and conditions as contained in the operation and maintenance plans.

However, the BA does not identify Warm Creek as being in the action area and does not include the CHC3 or WMC1 diversions as part of the proposed actions, as neither are located on federal land. (Dkt. 41); BA, Intro. at 4, 7; and Ch. 1 at 29. Further, the ditches on Champion Creek to which Plaintiff claims rights-of-way do not appear to

_____

could properly consider filings and materials related to the ICL litigation in deciding the motion to dismiss here.

[6] Plaintiff's supplement cites the internet location of the BA: https://www.fs.usda.gov/detail/sawtooth/?cid=FSEPRD1084019. (Dkt. 41). The Court takes judicial notice of the BA as it is a public record, and will consider the BA in deciding this factual motion to dismiss. Fed. R. Evid. 201; *Kingman Reef Atoll Investments, L.L.C. v. U.S. Dept. of Interior*, 195 F.Supp.2d 1178, 1183 (D. Haw. 2002) ("When, as here, a Rule 12(b)(1) attack is factual, the court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment....[and] need not presume the truthfulness of a plaintiff's allegations").

have been considered in the BA.[7] Thus, the materials Plaintiff relies on to show a dispute of title, do not demonstrate that the USFS has taken a position concerning Plaintiff's alleged pre-FLPMA rights-of-way to access and maintain the CHC3 ditches and Warm Creek to facilitate irrigation of the CHC3 and WMC1 diversions. Indeed, the omission of Plaintiff's claimed rights-of-way from the proposed actions in the BA could reflect that the USFS has determined it does not have discretionary control over those rights-of-way and, thus, there is no disputed title.

The Stipulation on Remedy expressly provides that the USFS has not yet determined whether any of the rights-of-way require USFS authorization, and that the USFS is not required to request initiation of ESA consultation if the USFS determines it lacks discretionary involvement or control over a right-of-way. *ICL v. USFS*, Stipulation on Remedy at Dkt. 43 (D. Idaho Nov. 19, 2019). Thus, the exclusion of the claimed rights-of-way from the BA does not support Plaintiff's assertion that the USFS has determined it has discretionary control over Plaintiff's rights-of-way and, therefore, a dispute of title exists.[8]

Plaintiff concedes that the CHC3 and WMC1 diversions and Warm Creek are not included in the BA, and has not otherwise shown that the USFS has initiated ESA

---

[7] The BA evaluated other diversions and ditches on Champion Creek. However, the Champion Creek ditches at issue here, located in SE1/4 NE1/4 of Section 21, do not appear on the maps in the BA relevant to Champion Creek. (Dkt. 32 ¶ 39, Ex. A); BA, Ch. 1.

[8] The exclusion of Plaintiff's claimed rights-of-way from the BA separates this case from the other similarly filed cases that were argued during the joint hearing on April 4, 2024, and accounts for the differing determination on the disputed title requirement. (Dkt. 40).

consultation over his claimed pre-FLPMA rights-of-way. (Dkt. 41). During the hearing, Plaintiff argued that the CHC3 and WMC1 were among the twenty rights-of-way identified by the parties in the ICL litigation and, thus, were included in the USFS' ESA consultation. (Dkt. 41).[9] It is true that the CHC3 and WMC1 diversions were among the twenty named diversions at issue in the ICL litigation and the Stipulation on Remedy. However, the fact that the CHC3 and WMC1 diversions were identified in the ICL litigation does not mean the USFS has initiated ESA consultation on Plaintiff's claimed pre-FLPMA rights-of-way related to those diversions or that the USFS has taken a position concerning Plaintiff's claimed rights-of-way, let alone an adverse position disputing title. To the contrary, as discussed above, the omission of the rights-of-way claimed in this matter from the BA, coupled with the Stipulation on Remedy's exception to the ESA consultation requirement, reflects that the diversions may not be presently subject to ESA consultation and/or the USFS has determined it does not have discretionary control over them.

For these reasons, the Court finds Plaintiff's assertion of a disputed title on this basis – that the USFS has taken the position that it has discretion and control over the rights-of-way by initiating ESA consultation – fails because the facts Plaintiff relies on to prove his assertion do not demonstrate the USFS has taken a position concerning his

---

[9] Plaintiff's supplement refers to the Cleveland Creek (CLC1) and Warm Creek (WMC1) diversions. (Dkt. 41). Plaintiff's claimed rights-of-way in this case relate only to the CHC3 and WMC1 diversions, and the related ditches. The CLC1 diversion is at issue in a separate case. *See Hansen v. United States*, Case No. 4:20-cv-00326-DKG. The Court notes this only for purposes of ensuring the record is clear. It does not affect the substance of the decision stated herein.

claimed pre-FLPMA rights-of-way.[10] At least not yet. However, the mere possibility that the USFS may at some point initiate ESA consultation of Plaintiff's claimed pre-FLPMA rights-of-way, and thereby assert it has discretion and control, does not establish a present disputed title. *See Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000) (Possible future dispute of title does not satisfy the jurisdictional requirement for a waiver of sovereign immunity.); *Kane Cnty.*, 772 F.3d at 1212-14 (Ambiguity regarding title to real property "is insufficient to constitute 'disputed title'" under QTA.).

Further, Plaintiff's broad, conclusory allegations that the USFS has taken the position that it has discretion and control over the diversions and ditches fails to show a disputed title for two reasons. (Dkt. 32 at ¶¶ 7, 21, 24, 27, 29). First, bare, conclusory assertions of a disputed title are insufficient to defeat a factual jurisdictional challenge under Rule 12(b)(1). *St. Clair*, 880 F.2d at 201. Plaintiff cannot create a disputed title by simply asserting his disagreement with the position that the USFS has any discretionary authority or control over the diversions and ditches or a duty to consult. (Dkt. 32 at ¶ 29). Rather, to satisfy his burden, Plaintiff must present evidence that the United States has taken a position adverse to his claimed rights-of-way. Because the facts and materials relied on by Plaintiff here fail to do so, Plaintiff has not met his burden.

---

[10] The Court's decision on this point is somewhat different from the United States' position arguing that the ESA consultation on the DBE applications does not establish a disputed title relevant to Plaintiff's pre-FLPMA rights-of-way. (Dkt. 38 at 3). Here, the Court finds Plaintiff has not shown a disputed title because the diversions and ditches to which Plaintiff claims to have pre-FLPMA rights-of-way were not among those included in the ESA consultation and the proposed actions in the BA.

Second, the USFS' exercise of regulatory or supervisory actions over the diversions and ditches running across United States' land, alone, does not evidence a disputed title. *Mills*, 742 F.3d at 406; *McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005); *Shupe v. United States*, 2022 WL 973785, at *4 (D. Idaho March 31, 2022) (recognizing "regulatory or supervisory actions are not enough" to trigger the QTA's limitations period, such as banning motorized traffic in a national recreation area, unless the action amounts to a denial of access signaling the governments exclusive control over the disputed roads). To show a disputed title, Plaintiff must demonstrate the USFS has taken a position in conflict with a third party regarding title – such as proposing actions in a BA or other official statement by the United States demonstrating its position that the claimed rights-of-way do not exist. *Mills*, 742 F.3d at 405.

Plaintiff relies on *Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006) to support his argument that his claimed pre-FLPMA rights-of-way are not subject to agency discretion or ESA consultation and, therefore, the USFS' position in the ICL litigation that it has a duty to consult evidences a disputed title. (Dkt. 37 at 4-5). However, *Matejko* is distinguishable from the facts and issues presented here.

In *Matejko*, the existence of vested pre-FLPMA rights-of-way was undisputed and assumed. *Id.* at 1104. The issue decided in *Matejko* was whether the BLM's failure to exercise its discretion to regulate the established rights-of-way, assuming it had discretion, was an agency action triggering the duty to consult under the ESA. *Id*. at 1107. There, the court held that the BLM's failure to exercise its discretion did not trigger ESA consultation. In contrast, the existence of the rights-of-way claimed here is not assumed.

Rather, Plaintiff seeks to establish the existence of his claimed rights-of-way, which is a different question not addressed in *Matejko*. Additionally, Plaintiff here argues the USFS has taken action by asserting discretionary control over Plaintiff's diversions and ditches, unlike the BLM's inaction in *Matejko*. *See ICL v. USFS*, 2019 WL 2505031, at *3-4 (D. Idaho June 17, 2019) (distinguishing *Matejko*). Simply put, an agency's inaction of its discretionary control over an established right-of-way and an agency's duty to consult under the ESA, as addressed in *Matejko*, are different circumstances and issues from the question presented here of whether a disputed title exists for purposes of the QTA.

Further, Plaintiff asserts the decision in *Matejko* means that agencies have no discretionary authority over rights-of-way established under R.S. 2339 or similar legal authority and, therefore, no duty to consult under the ESA. (Dkt. 37 at 4-5). That contention stretches *Matejko* too far. While the *Matejko* decision questioned the extent of the agency's discretionary authority over the diversions under the facts in that case, the Ninth Circuit clearly recognized that an agency could exercise regulatory authority over rights-of-way where such authority had been retained under statute, rule, or contract. *Matejko*, 468 F.3d at 1108-1110. Thus, *Matejko* does not stand for the broad proposition that all established rights-of-way are forever free of any discretionary regulation by the managing agency, as Plaintiff argues here. *Id.* at 1110 (recognizing examples where agencies retained discretionary authority); *see also ICL v. USFS*, 2019 WL 2505031, at *4 (finding the USFS retained discretion under FLPMA to place conditions on any DBE or SUP for the benefit of listed species). Indeed, courts have long held that federal agencies retain the authority to reasonably regulate activities on public lands, including

the activities by holders of rights-of-way. *See e.g. Adams v. United States,* 3 F.3d 1254, 1260 (9th Cir. 1993); *United States v. Jenks*, 129 F.3d 1348, 1354 (10th Cir. 1997); *Baker Ranches, Inc. v. Zinke*, 635 F.Supp.3d 1080, 1093-94 (D. Nev. 2022); *City of Baker City, Or. v. United States*, 2011 WL 4381534, at *3 (D. Or. Sept. 19, 2011).

For the reasons stated above, the Court finds Plaintiff has failed to demonstrate the existence of a disputed title based on the ESA consultation ordered in the ICL litigation.

### B. Statements by Randy Miller

Next, the Amended Complaint alleges USFS "representative" Randy Miller made statements contemporaneous to the ICL litigation that Plaintiff did not have an RS 2339 right-of-way for any of his ditches. (Dkt. 32 ¶¶ 12, 22). Plaintiff alleges Miller's statements made clear, for the first time, that Plaintiff's pre-existing rights in his ditches and diversions were not recognized by the United States, and that the United States believed it could control the ditches and diversions, including denying Plaintiff's use of them. (Dkt. 32 at ¶ 30). Such statements could show the existence of a disputed title as they appear to express a position by the USFS that is adverse to Plaintiff's claimed rights-of-way.

On this motion, the United States argues Plaintiff's allegations regarding Miller's statements are unsupported and that Miller had no authority to issue a determination on behalf of the United States regarding Plaintiff's claimed easements. (Dkt. 34 at 6; Dkt. 38

at 3).[11] Therefore, the United States asserts, any statements by Miller are not evidence that the United States disputed title. In support of its motion, the United States filed a Declaration of Kathryn Conant, Director of Lands and Minerals for the USFS Intermountain Region, stating "at no time did Miller have the authority to reach a final determination with respect to any title claim against the [USFS], including a claim for an easement under the Mining Law of 1866." (Dkt. 34-2 ¶ 9).

In response, Plaintiff maintains Miller's statements expressly show a disputed title and that Miller's casework on RS 2339 claims and supervisory authority over USFS' land status personnel evidence his authority to speak on behalf of the USFS on RS 2339 matters. (Dkt. 37 at 3). Plaintiff relies on an excerpt of Miller's deposition taken in another QTA case. (Dkt. 37 at 3; Dkt. 41).[12] In his deposition, Miller testified about his duties as the assistant program manager and surveyor for the USFS' boundary and title

---

[11] In its opening brief, the United States does not dispute the allegations that Miller made any statements, and the United States has not challenged the sufficiency of the pleading itself under Rule 12(b)(6). (Dkt. 34). Rather, the United States argues that statements by Miller cannot establish a dispute of title because Miller lacked the authority to assert the position of the United States concerning title. (Dkt. 34). In its reply, however, the United States newly asserts that "Plaintiff has offered no evidence that Miller made these statements…." (Dkt. 38 at 3). Arguments raised for the first time in a reply brief are not properly considered. *Ass'n of Irritated Residents v. C&R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006). The Court therefore will consider only Miller's authority to speak on behalf of the United States, but will not address the sufficiency of the allegations in the Amended Complaint concerning whether Miller made any statements and whether the alleged statements evidence a disputed title.

[12] The excerpt of Miller's deposition was not filed with Plaintiff's response brief contrary to Local Civil Rule 7.1(c)(1), directing the responding party to "serve and file with the response brief any….documentary evidence, and other supporting materials on which the responding party intends to rely." Referencing a document filed in the record of another case does not satisfy the Local Rule, and causes unnecessary confusion and delay. The excerpt has since been filed in this case. (Dkt. 41). When citing to Miller's deposition, the Court will use the traditional format of referencing the page and line numbers of the deposition transcript itself. (Dkt. 41).

division, and about how the USFS keeps track of and manages RS 2339 and Ditch Bill Application case files. (Dkt. 41, Depo. Miller at 12:6-16; 13:7-19; 21:1-25:13). Miller stated he processed and managed "a lot" of rights-of-way cases, including primarily RS 2339 cases; and that he had some supervisory responsibilities with land status personnel. (Dkt. 41, Depo. Miller at 13:13 – 15:3; 26:10-13).

The Court finds the deposition demonstrates Miller handled a number of RS 2339 cases, was knowledgeable about processing RS 2339 cases, and had some supervisory duties. However, the deposition reveals that Miller did not make the final determination concerning whether RS 2339 rights-of-way were recognized by the USFS. (Dkt. 41, Depo. Miller at 15:14-20) (explaining the USFS only recognized about half of the cases Miller resolved as valid RS 2339 rights-of-ways). This is consistent with the Conant Declaration provided by the United States, stating: "[a]t no time did Mr. Miller have the authority to reach a final determination with respect to any title claim against the [USFS], including a claim for an easement under the Mining Law of 1866." (Dkt. 34 ¶ 9). Based on the record presently, the Court finds Plaintiff has not shown that Miller had the authority to make a final determination concerning an RS 2339 claim. Therefore, any statements Miller allegedly made to Plaintiff concerning Plaintiff's claimed RS 2339 rights-of-way were not the position of the United States concerning title and, thus, not evidence of a disputed title. *Mills*, 742 F.3d at 406 (citing *Wagner v. Dir., Fed. Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir. 1988)). Plaintiff therefore has not demonstrated the existence of a disputed title based on Miller's statements to Plaintiff.

**MEMORANDUM DECISION AND ORDER – 18**

## C. Conclusion

Based on the foregoing, the Court finds Plaintiff has failed to satisfy his burden to establish subject matter jurisdiction is present as to Claim One. *See Kokkonen*, 511 U.S. at 377. Accordingly, the motion to dismiss will be granted and Claim One will be dismissed without prejudice.

However, the Court will grant Plaintiff leave to amend as it cannot conclusively say that the jurisdictional deficiency found herein cannot be cured. Fed. R. Civ. P. 15(a) (Leave to amend is freely give "when justice so requires."); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (Leave to amend should be granted "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts.").[13] Plaintiff's arguments of a disputed title based on the USFS' position in the ICL litigation and the BA are not well developed or clear. Similarly, the allegations concerning statements or representations by the USFS concerning Plaintiff's claimed rights-of-way are extremely broad, non-specific, and conclusory with regard to: the person making the statement, what was said, the form in which a statement was made; to whom the statement was made; and which ditches and/or diversions the statement concerned. *See e.g.*, (Dkt. 32 at ¶¶ 7, 11, 12, 27, 28, 30). While the sufficiency of the pleadings was not before the Court on this Rule 12(b)(1) motion to dismiss, the Court

---

[13] Plaintiff has not requested nor articulated any basis for allowing leave to amend. (Dkt. 37). Nevertheless, the Court has considered whether amendment is warranted as to both Claims One and Two. *Unified Data Servs., LLC v. Fed. Trade Commission*, 39 F.4th 1200, 1208 (9th Cir. 2022) ("[L]eave to amend should be given, even sua sponte, if amendment could cure a pleading defect.").

finds the generalized nature of the allegations lends itself to the possibility that Plaintiff could identify statements or actions by the United States that evidence a disputed title. Thus, granting one opportunity for leave to amend as to Claim One is not futile. Plaintiff is strongly encouraged to address all possible shortcomings when amending the pleading, as additional leave to amend will not be granted absent a further showing of why any deficiencies could not have been addressed and cured previously.

## 2. Claim Two - Quiet Title Under Idaho Law

The second claim for relief alleges Plaintiff has rights-of-way across Defendant's property to access Warm Creek and to take measures necessary to facilitate and ensure the delivery of water to WMC1. (Dkt. 32 ¶ 59). The source of the claimed rights-of-way is Idaho common law. (Dkt. 32 ¶¶ 59, 61). Plaintiff seeks to quiet title in the right-of-way under Idaho's quiet title act, Idaho Code § 6-401. (Dkt. 32 ¶¶ 62). For the reasons that follow, the Court finds that Claim Two must be dismissed for lack of subject matter jurisdiction.

Claim Two challenges the United States' title to real property based on state law. (Dkt. 32 ¶¶ 58-62). However, the QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title in real property." *Block*, 461 U.S. 273, 286. Further, an action can be brought against the United States only where the federal government waives its sovereign immunity. *See Blackburn*, 100 F.3d at 1429. Absent a clear waiver of sovereign immunity, the Court is without subject matter jurisdiction and the case must be dismissed. *Block*, 461 U.S. at 280 (A plaintiff is "barred by federal sovereign immunity from suing the United States in the absence of an express waiver of

this immunity by Congress."); *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096 (9th Cir. 2005) ("Absent a clear waiver, sovereign immunity precludes suit against the United States.").

The United States has waived sovereign immunity for claims brought against it under the QTA. 28 U.S.C. § 2409a(a). However, because the United States has not waived sovereign immunity for claims brought against it to quiet title under Idaho law, the Court is without jurisdiction over Claim Two. *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). Moreover, as discussed above, no disputed title has been shown relevant to Plaintiff's assertion of rights-of-way to access and facilitate delivery of water from Warm Creek. Accordingly, Claim Two will be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).[14] Because the exclusivity of the QTA and the absence of a waiver of sovereign immunity are absolute bars to the claim challenging the United States' title to real property based on state law, the dismissal will be with prejudice and without leave to amend. *Frigard*, 862 F.2d at 204.

## ORDER

THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. 34) is **GRANTED** as follows:

---

[14] During the hearing, Plaintiff argued that the motion to dismiss does not include dismissal of Claim Two. However, the motion broadly argues for dismissal of the entire Amended Complaint. (Dkt. 34, 38). In any event, the Court must ensure it has subject matter jurisdiction and, where it does not, must dismiss the action. Fed. R. Civ. P. 12(h)(3); *United States v. Moreno-Morillo*, 334 F.3d at 830. Such is the case here as to Claim Two.

1. Claim One is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file a

   Second Amended Complaint as to Claim One on or before **July 3, 2024**.

2. Claim Two is **DISMISSED WITH PREJUDICE** and without leave to amend.

DATED: May 20, 2024

Honorable Debora K. Grasham
United States Magistrate Judge